LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEYDY MONDRAGON and PHILLIP SABATER,<br>*on behalf of themselves, FLSA Collective Plaintiffs,*<br>*and the Class,*<br><br>Plaintiffs,<br><br>v.<br><br>HARD ROCK INTERNATIONAL (USA), INC.<br>d/b/a HARD ROCK INTERNATIONAL,<br>SEMINOLE HARD ROCK SUPPORT SERVICES, LLC<br>d/b/a SEMINOLE HARD ROCK SUPPORT SERVICES,<br>SEMINOLE HARD ROCK ENTERTAINMENT INC.<br>d/b/a SEMINOLE GAMING,<br>HR HOTEL NYC LLC<br>d/b/a HARD ROCK HOTEL NEW YORK,<br>HARD ROCK HOTELS, INC.,<br>NYY STEAK LLC,<br>NYY STEAK MANHATTAN, LLC, and<br>JOHN DOE CORPORATIONS 1-100,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs, GEYDY MONDRAGON ("Plaintiff MONDRAGON") and PHILLIP SABATER ("Plaintiff SABATER", collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants (i) HARD ROCK INTERNATIONAL (USA), INC. d/b/a HARD ROCK INTERNATIONAL, (ii) SEMINOLE HARD ROCK SUPPORT SERVICES, LLC

d/b/a SEMINOLE HARD ROCK SUPPORT SERVICES, (iii) SEMINOLE HARD ROCK ENTERTAINMENT INC. d/b/a/ SEMINOLE GAMING, (iv) HR HOTEL NYC LLC d/b/a HARD ROCK HOTEL NEW YORK, (v) HARD ROCK HOTELS, INC., (vi) NYY STEAK LLC, (vii) NYY STEAK MANHATTAN, LLC, and (viii) JOHN DOE CORPORATIONS 1-100 (collectively, the "Corporate Defendants" or "Defendants"), and states as follows:

**INTRODUCTION**

1. Plaintiffs bring this action on behalf of themselves and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid wages, including overtime wages, due to off-the-clock work and time-shaving, (2) unlawfully retained gratuities, (3) liquidated damages, and (4) attorneys' fees and costs.

2. Plaintiffs also bring this action on behalf of themselves and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6 §§ 190 et seq., and Article 19 §§ 650 et seq., seeking from Defendants: (1) unpaid regular and overtime wages due to off-the-clock work and time-shaving, (2) unlawfully retained gratuities, (3) unpaid call-in pay premiums, (4) statutory penalties for wage notice and wage statement violations, (5) liquidated damages, and (6) attorneys' fees and costs.

3. Plaintiff MONDRAGON further alleges, pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296, the New York City Human Rights Law ("NYCHRL"), Administrative Code of the City of New York § 8-107, and the New York City Earned Safe and Sick Time Act ("ESSTA") Administrative Code of the City of New York § 20-911, that Defendants

violated her rights by interfering with her medical leave, discriminating against her on the basis of pregnancy-related conditions, and retaliating against her for exercising her rights. Plaintiff MONDRAGON seeks from Defendants: (1) compensatory damages, (2) punitive damages, (3) back pay, and (4) attorneys' fees and costs.

4. Plaintiff SABATER and Plaintiff MONDRAGON further allege, on an individual basis, that they were retaliated against due to their complaints regarding unpaid tips and seek to recover: (1) front wages, (2) back wages, (3) punitive damages, (4) compensatory damages, and (5) attorneys' fees and costs.

5. Defendants are a global hospitality and gaming enterprise, owned by the Seminole Tribe of Florida, known famously as "Hard Rock". Defendants own and operate (as well as franchise) hundreds of hotels, casinos, and cafes across North America, South America, Asia, Europe, and Africa (*see* https://www.hardrock.com/locations.aspx)[1].

6. In the United States, Defendants operate hotels, casinos, and cafes out of the following States and regions: (i) California, (ii) Connecticut (iii) District of Columbia, (iv) Florida, Georgia, (v) Hawaii, (vi) Illinois, (vii) Indiana, (viii) Louisiana, (ix) Maryland, (x) Mississippi, (xi) Nevada, (xii) New Jersey, (xiii) New York, (xiv) Ohio, Oklahoma, (xv) Pennsylvania, (xvi) South Carolina, (xvii) Tennessee, (xviii) Texas, and (xix) Virginia.

7. Plaintiffs, putative collective members, and putative class members are all current and former employees working as servers, bussers, runners, hostesses, bartenders, food runners, delivery persons, food preparers, dishwashers, and hotel room attendants for Defendants at the Establishments (*infra* at 6) across the United States. Plaintiffs and similarly situated workers were victims of Defendants' systematic policies and practices designed to underpay wages, unlawfully

---

[1] Accessed on January 16, 2026.

retain tips and gratuities, and deny legally mandated premiums and benefits in violation of protections afforded under the FLSA and the following State laws and regulations in effect in the States where Defendants do business:

i. California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;
ii. District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;
iii. Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.;*
iv. Hawaii: Hawaii Wage and Hour Law, Haw. Rev. Stat. § 387-2 *et seq.*,
v. Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;
vi. Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-415 *et seq.*,
vii. Nevada: Nevada Revised Statutes, Nev. Rev. Stat. § 608.018, *et. seq.*
viii. New Jersey: New Jersey Wage and Hour Law, N.J. Stat. § 34.11-56a4
ix. New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;
x. Ohio: Ohio Revised Code Annotated § 4111.03 *et seq.*;
xi. Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;
xii. Tennessee: Tennessee Code Annotated, Tenn. Code Ann. § 50-2-114; and
xiii. Virginia: Code of Virginia, Va. Code Ann. § 9.1-701.

(collectively, the "Relevant State Wage and Hour Laws" or "RSWHL").

8. To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work are not covered by the protection of a State's wage laws, Plaintiffs further allege that they and others similarly situated are entitled to recover from Defendants, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331 (federal question) and 1337 (regulation of commerce), and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

10. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391 as Plaintiff worked in this district and, therefore, a substantial part of the events and omissions giving rise to the claim occurred in this district.

## PARTIES

*Plaintiffs*

11. Plaintiff GEYDY MONDRAGON is an adult who resides in Queens County, New York.

12. Plaintiff PHILLIP SABATER is an adult who resides in New York County, New York.

*The Corporate Defendants*

13. Defendants own and operate the following hotels, casinos, and cafes across the United States:

| Location Name | Business Address |
|---|---|
| "Hard Rock Hotel & Casino Atlantic City" | 1000 Boardwalk, Atlantic City, NJ 08401 |
| "Hard Rock Cafe Atlantic City" | |
| "Hard Rock Hotel New York" | 159 W 48th St, New York, NY 10036 |
| "Hard Rock Casino Rockford" | 7801 E State St, Rockford, IL 61107 |
| "Hard Rock Cafe Rockford" | |
| "Hard Rock Casino Northern Indiana" | 5400 W 29th Ave, Gary, IN 46406 |
| "Hard Rock Cafe Northern Indiana" | |
| "Hard Rock Cafe Baltimore" | 601 E Pratt St, Baltimore, MD 21202 |

| | |
|---|---|
| "Hard Rock Cafe Hollywood on Hollywood Blvd" | 6801 Hollywood Blvd Suite 105, Los Angeles, CA 90028 |
| "Hard Rock Cafe Honolulu" | 280 Beach Walk, Honolulu, HI 96815 |
| "Hard Rock Cafe Key West" | 313 Duval St, Key West, FL 33040 |
| "Hard Rock Cafe Las Vegas" | 3771 Las Vegas Blvd S #120, Las Vegas, NV 89109 |
| "Hard Rock Cafe Miami" | 401 Biscayne Blvd, Miami, FL 33132 |
| "Hard Rock Cafe Myrtle Beach" | 1318 Celebrity Cir, Myrtle Beach, SC 29577 |
| "Hard Rock Cafe Nashville" | 100 Broadway, Nashville, TN 37201 |
| "Hard Rock Cafe New Orleans" | 125 Bourbon St, New Orleans, LA 70130 |
| "Hard Rock Cafe New York" | 1501 Broadway, New York, NY 10036 |
| "Hard Rock Cafe Niagara Falls USA" | 333 Prospect St, Niagara Falls, NY 14303 |
| "Hard Rock Cafe Philadelphia" | 1113 Market St, Philadelphia, PA 19107 |
| "Hard Rock Cafe Pigeon Forge" | 2050 Parkway, Pigeon Forge, TN 37863 |
| "Hard Rock Cafe San Antonio" | 111 W Crockett St, San Antonio, TX 78205 |
| "Hard Rock Cafe San Francisco" | 39 Pier #256, San Francisco, CA 94133 |
| "Hard Rock Cafe Washington DC" | 999 E St NW, Washington, DC 20004 |
| "Hard Rock Cafe Yankee Stadium" | 1 E 161st St, Bronx, NY 10451 |

14. Defendants operate and manage (but do not own) the following hotels, casinos, and cafes across the United States:

| **Location Name** | **Business Address** |
|---|---|
| "Hard Rock Hotel & Casino Bristol" | 500 Gate City Hwy, Bristol, VA 24201 |
| "Hard Rock Cafe Bristol" | |
| "Hard Rock Hotel & Casino Sacramento at Fire Mountain" | 3317 Forty Mile Rd, Wheatland, CA 95692 |
| "Hard Rock Cafe Sacramento at Fire Mountain" | |
| "Hard Rock Casino Cincinnati" | 1000 Broadway, Cincinnati, OH 45202 |
| "Hard Rock Cafe Cincinnati" | |

(Collectively, all owned and/or operated Hard Rock locations, which includes those Hard Rock locations not listed here the "Establishments").

15. The Establishments are all owned and operated by Defendant HARD ROCK INTERNATIONAL (USA), INC. directly or through its wholly owned subsidiaries—the other

Corporate Defendants in this action. Though the Establishments all have a Corporate Defendant assigned as its nominal owner and operated, each of the Corporate Defendants are owned and operated by the parent company, Defendant HARD ROCK INTERNATIONAL (USA), INC., which operates the Establishments through its subsidiaries, the Corporate Defendants. Therefore, all the Establishments have common ownership, common management, and common wage policies implemented by their common ownership.

16. Corporate Defendant HARD ROCK INTERNATIONAL (USA), INC. ("Hard Rock International") is a business corporation organized under the laws of the State of Florida with a principal place of business located at 5701 Stirling Road, Davie, FL 33314, and service of process address at CT Corporation System, 1200 S Pine Island Road, Plantation, FL 33324.

17. At all relevant times, Corporate Defendant Hard Rock International owned and operated hotels and cafes across the United States and worldwide under the Hard Rock brand name. Hard Rock International is owned by the Seminole Tribe of Florida and operates its hospitality and gaming businesses in coordination with its affiliated and subsidiary entities.

18. Corporate Defendant SEMINOLE HARD ROCK ENTERTAINMENT, INC. ("Seminole Gaming") is a business corporation organized under the laws of the State of Florida with a principal place of business located at 5701 Stirling Road, Davie, FL 33314, and service of process address at CT Corporation System, 1200 S Pine Island Road, Plantation, FL 33324.

19. At all relevant times, Corporate Defendant Seminole Gaming provided enterprise-wide oversight and support across Hard Rock establishments, including uniform HR policies, workforce systems, training platforms, and brand standards.

20. Corporate Defendant SEMINOLE HARD ROCK SUPPORT SERVICES, LLC ("Seminole Support Services") is a limited liability company organized under the laws of the State

of Florida with a principal place of business located at 5701 Stirling Road, Davie, FL 33314, and service of process address at CT Corporation System, 1200 S Pine Island Road, Plantation, FL 33324.

21. At all relevant times, Corporate Defendant Seminole Support Services functioned as the centralized management, operational, HR, compliance, and branding support arm of the enterprise, providing worldwide support to hotels, casinos, cafes and other locations within the Hard Rock family of brands.

22. Corporate Defendant HR HOTEL NYC LLC ("HR Hotel NYC") is a limited liability company organized under the laws of the State of Florida with a principal place of business located at 5701 Stirling Road, Davie, FL 33314, and service of process address at CT Corporation System, 1200 S Pine Island Road, Plantation, FL 33324.

23. At all relevant times, Corporate Defendant HR Hotel NYC operated the Hard Rock Hotel New York, acting under the centralized corporate authority and operational control of Hard Rock International and Seminole Gaming.

24. Corporate Defendant HARD ROCK HOTELS, INC. is a business corporation organized under the laws of the State of New York with a principal place of business located at 5701 Stirling Road, Davie, FL 33314, and service of process address at Corporation Service Company, 80 State Street, Albany, New York 12207.

25. At all relevant times, Corporate Defendant HARD ROCK HOTELS, INC. operated the Hard Rock Hotel New York and related restaurants within the hotel, acting under the centralized corporate authority and operational control of Hard Rock International and Seminole Gaming.

26. Corporate Defendant NYY STEAK LLC is a foreign limited liability company organized under the laws of the State of New York with a principal place of business located at 5701 Stirling Road, Davie, FL 33314, and service of process address at CT Corporation System, 28 Liberty Street, New York, NY 10005.

27. At all relevant times, Corporate Defendant NYY Steak LLC operated restaurants at the Hard Rock Hotel New York, acting under the centralized corporate authority and operational control of Hard Rock International and Seminole Gaming.

28. Corporate Defendant NYY STEAK MANHATTAN, LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 5701 Stirling Road, Davie, FL 33314, and service of process address at CT Corporation System, 28 Liberty Street, New York, NY 10005.

29. At all relevant times, Corporate Defendant NYY Steak Manhattan, LLC operated restaurants at the Hard Rock Hotel New York, acting under the centralized corporate authority and operational control of Hard Rock International and Seminole Gaming.

30. At all relevant times, each of the Corporate Defendants individually and collectively had an annual dollar volume of sales in excess of $500,000.

**Defendants' Joint Employment and Single Integrated Enterprise**

31. The Establishments are operated, controlled, and managed by Hard Rock International together with and through its affiliated and subsidiary entities, including Seminole Gaming, Seminole Support Services, Hard Rock Hotels, Inc., HR Hotel NYC, NYY Steak LLC, NYY Steak LLC Manhattan, LLC, and JOHN DOE CORPORATIONS 1-100. These entities function as joint employers and as a single integrated enterprise, sharing centralized control of

labor relations, common management, interrelated operations, common ownership, and financial control.

32. Specifically, the Establishments are engaged in related activities and share common management, common ownership, and a common business purpose:

i. The Seminole Tribe of Florida owns all Establishments through Corporate Defendants, Hard Rock International and Seminole Gaming.

ii. All Establishments share the same corporate headquarters, located at 5701 Stirling Road, Davie, FL 33314.

iii. All Establishments are overseen by a unified Senior Leadership Committee at the corporate level. Hard Rock describes this Senior Leadership Committee as a management body that "represents and supports all facets of Hard Rock International's operations," confirming that decision-making authority, operational oversight, and high-level managerial direction flow from the same centralized governance structure across all locations.

iv. The "Contact Us" page of Defendants' website provides centralized points of contact for all Hard Rock Establishments, including designated corporate email addresses for Hotel Development, Café Development, and Casino Development, which are presented as the enterprise-wide channels for inquiries relating to any Hard Rock branded location.

v. The Establishments share a corporate services, HR support unit named Seminole Hard Rock Support Services, which is described as providing "worldwide support to hotels, casinos, cafes and more within our family of brands." The "brands" listed on the website are those of Hard Rock International.

vi. Seminole Hard Rock Support Services manages the official corporate portal for recruiting front-and-back-of-house roles including but not limited to: servers, bartenders, cooks, bussers, and housekeepers for all Establishments. All of these postings use the same application system (iCMS), the same privacy disclosures, and the same EEO/ADA statements, demonstrating that recruitment, data collection and candidate evaluation for these service jobs are handled through a centralized HR technology and policy infrastructure, not individually by each Establishment.

vii. The Establishments jointly advertise that they offer uniform coverage and benefits to all employees, including but not limited to: annual bonus eligibility, health insurance options, e-learning and training, free employee shift meals, PTO, tuition reimbursement, leadership development initiatives, and retirement programs. These programs are implemented nationwide.

viii. All employees across all Hard Rock locations are trained through the same online training platform, the "School of Hard Rock," which administers uniform mandatory workplace training, including sexual harassment prevention.

ix. Plaintiff MONDRAGON personally observed back-of-house employees and managers being transferred from the Hard Rock Hotel & Casino Atlantic City and Hard Rock Café Atlantic City to the Hard Rock Hotel New York location to address short-term staffing shortages. These transfers occurred seamlessly, without any break in employment or re-hiring process.

x. Employees are treated as part of the same organizational workforce for the purpose of workplace privileges. Although Plaintiff MONDRAGON worked exclusively at the Hard Rock Hotel New York, she received employee discounts at the other Hard Rock Locations.

xi. The Establishments coordinate branding and event promotion through shared social media channels. For example, both @hardrockcafe and @officialhardrock Instagram pages routinely promote events at New York, San Francisco, and Nashville locations.

xii. Similarly, the Hard Rock Facebook page advertises events at Hard Rock Establishments in both New Jersey and New York.

xiii. Defendants also coordinate and promote multi-location events across their Establishments, further demonstrating centralized planning, marketing, and operational control. For example, Hard Rock has hosted the live show Return of the Mike across multiple Hard Rock locations, including Rockford, Cincinnati, Hollywood, and Atlantic City.

xiv. At all relevant times, Hard Rock International utilized a centralized human resources system that hires, fires, administers, and manages human relations for all employees of all Establishments (including Plaintiffs, FLSA Collective Plaintiffs, and Class Members).

xv. At all relevant times, Hard Rock International utilized a centralized payroll system that manages the payroll for all employees of all Establishments (including Plaintiffs, FLSA Collective Plaintiffs, and Class Members).

xvi. At all relevant times, Defendants regularly transferred and interchanged employees between neighboring Establishments. Defendants intentionally and specifically designed their enterprise to utilize a centralized human resources department and payroll department in order to easily and efficiently transfer employees among neighboring Establishments. The successful operations of these Establishments over the years adequately relied on Defendants' ability to transfer and interchange employees between them (especially during emergencies, epidemics, pandemics, and other times of crisis).

33. The Establishments are operated by Hard Rock International, with and through all Corporate Defendants, as a single integrated enterprise. The Establishments are commonly operated, controlled, and/or managed by Hard Rock International, which is the parent company and principal of all the Establishments' operating entities and has the power to make binding decisions for the entities.

34. All the Establishments are engaged in related activities and have a common business purpose. Hard Rock International operates all Establishments with the intent of generating revenue (i) by providing hospitality and cuisine, and (ii) by utilizing business management skills.

35. All Establishments commonly use the trademarked Hard Rock brand name and bear the Hard Rock logo.

36. Although Plaintiffs did not work at all of Defendants' Establishments, all Establishments and their operating entities are appropriately named in this Complaint because Defendants operated them as a single integrated enterprise and operate as joint employers. As illustrated above, all Establishments share common ownership and management, an interrelation of operations, and a centralized control of labor relations. The Establishments share numerous commonalities, that classify them as a single integrated enterprise, including but not limited to, commonly implementing identical illegal wage and hour policies through top-down management. Consequently, all Defendants are properly named on the basis of their outstanding liability to the similarly situated employees whom Plaintiffs seek to represent.

37. At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and applicable State wage laws.

38. At all relevant times, each of the Corporate Defendants was and continues to be an "employer" within the meaning of the FLSA and applicable State wage laws.

39. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

40. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## NATIONWIDE FLSA COLLECTIVE ACTION ALLEGATIONS

41. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house and back-of-house employees (including waiters, servers, bussers, bartenders, food runners, delivery persons, food preparers, dishwashers, hotel room attendants, hostesses, and runners) employed by Defendants at any of the Establishments on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

42. At all relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiffs and FLSA Collective Plaintiffs their proper wages, due to Defendants' policies of: (1) failing to pay proper wages, including overtime wages, due to time-shaving and off-the-clock work, and (2) failing to remit all tips earned. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

43. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective

Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## NATIONWIDE RULE 23 CLASS ACTION ALLEGATIONS

44. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees (including waiters, servers, bussers, bartenders, food runners, delivery persons, food preparers, dishwashers, hotel room attendants, hostesses, and runners) employed by Defendants at any of the Establishments on or after the date that is six (6) years two-hundred-and-twenty-eight (228) days (pursuant to NY's Executive Order tolling during the COVID pandemic), or the applicable period for each State's wage laws (the "Class" or "Class Members").

45. The Class Members are readily ascertainable. The number and identity of Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23. Plaintiffs are members of the Class.

46. To the extent necessary, Plaintiffs will designate subclasses for each of the States where Defendants have employees, including but not limited to a New York Subclass, Florida Subclass, California Subclass, District of Columbia Subclass, Hawaii Subclass, Illinois Subclass, Maryland Subclass, Nevada Subclass, New Jersey Subclass, Ohio Subclass, Pennsylvania Subclass, Tennessee Subclass, and Virginia Subclass.

47. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. Defendants operate hotels, cafes, and restaurants at dozens of locations nationwide, employing hundreds of non-exempt front-of-house and back-of-house workers across multiple states during the six-year period prior to filing.

48. The Class further includes a subclass of tipped employees ("Tipped Subclass" or "Tipped Subclass Members") who were subjected to Defendants' policies of illegal tip retention, including withholding of gratuities, service charge retention, and invalid tip pooling arrangements. The Tipped Subclass also numbers more than forty (40). Plaintiffs are members of the Tipped Subclass.

49. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices of Defendants, as alleged herein, of: (i) failing to pay for all hours worked, including overtime, due to time-shaving and off-the-clock work; (ii) failing to compensate call-in pay premiums for shifts lasting less than three (3) hours; (iii) failing to provide proper wage and hour notices at dates of hiring and annually thereafter, per requirements of applicable State wage laws; and (iv) failing to provide proper wage and hour statements, per requirements of applicable State wage laws. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.

Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

50. Furthermore, Plaintiffs and the Tipped Subclass were subjected to Defendants' policies and practices of unlawfully retaining tips and gratuities in violation of applicable State wage laws. Defendants (i) withheld gratuities that customers charged to their rooms and left for tipped employees, (ii) retained service charges applied to buyout events and private functions, (iii) included third-party contract labor in the tip pool, thereby diluting tips earned by Tipped Subclass members, (iv) "zeroed out" tips on comped meals and retained those gratuities, (vi) failed to provide tip sheets or service sheets allowing employees to verify proper tip calculations and distributions, and (v) failed to record the tip credit allowance taken on any wage statements or notices given to Plaintiffs and Tipped Subclass members.

51. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

52. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation

would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

53. Defendants and other employers throughout the states where Defendants operate violate applicable State wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

54. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

i. Whether Defendants employed Plaintiffs and the Class members within the meaning of applicable state wage and hour laws;

ii. What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class Members properly;

iii. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and Class Members for their work;

iv. Whether Defendants properly notified Plaintiffs and the Class Members of their hourly rates and overtime rates;

v. Whether Defendants provided proper wage statements informing Plaintiffs and the Class Members of their proper rates of compensation, and other information Defendants were required to provide to them on their wage statements, as provided under the applicable state wage and hour laws;

vi. Whether Defendants recorded and compensated Plaintiffs and Class Members for all hours worked;

vii. Whether Defendants required Plaintiffs and Class Members to perform unpaid off-the-clock work before and after their shifts;

viii. Whether Defendants required Plaintiffs and Class Members to work during meal breaks while clocked out;

ix. Whether Defendants required Plaintiffs and Class Members to complete mandatory unpaid training;

x. Whether Defendants unlawfully retained tips and gratuities that belonged to Plaintiffs and Tipped Subclass Members;

xi. Whether Defendants withheld gratuities from Plaintiffs and Tipped Subclass Members;

xii. Whether Defendants retained service charges from buyout events and private functions that should have been distributed to Plaintiffs and Tipped Subclass Members;

xiii. Whether Defendants included third-party contract labor in the tip pool, thereby diluting tips earned by Plaintiffs and Tipped Subclass Members;

xiv. Whether Defendants "zeroed out" tips on comped meals and retained those gratuities;

xv. Whether Defendants paid call-in pay premiums to Plaintiffs and Class Members for their shifts lasting less than three (3) hours;

xvi. Whether Defendants provided Plaintiffs and Class members with proper wage and hour notices at their dates of hiring and annually, per requirements of the applicable state wage and hour laws;

xvii. Whether Defendants provided Plaintiffs and Class members with proper wage statements with each payment of wages, as required by applicable state wage and hour laws; and

xviii. Whether Defendants required Tipped Subclass members to engage in side-work in a manner violating State wage laws.

## STATEMENT OF FACTS

*Plaintiff MONDRAGON*:

55. In or around December 2022, Plaintiff MONDRAGON was hired by Defendants to work as a hostess, busser, and runner at Defendants' Hard Rock Hotel New York, located at 159 W 48th Street, New York, NY 10036, specifically in the Sessions restaurant within the hotel.

56. From the beginning of her employment until around March 2025, Plaintiff MONDRAGON was scheduled to work five (5) days per week, Fridays through Tuesdays from 2:00 p.m. to 11:30 p.m., which amounted to forty-seven and a half (47.5) hours per week. Throughout her employment, Plaintiff MONDRAGON was assigned a thirty (30) minute break each day.

57. During her employment, Plaintiff would work her scheduled hours and additional hours in excess of her schedule. FLSA Collective Plaintiffs and Class Members worked similar schedules and similar hours in excess of those schedules.

58. Throughout her employment, Plaintiff MONDRAGON would frequently be required to work double shifts (a morning shift from 6:00 a.m. to 2:30 p.m. and an evening shift lasting until 11:30 p.m.). As a result, Plaintiff MONDRAGON would frequently work shifts with a spread exceeding ten (10) hours. FLSA Collective Plaintiffs and Class Members were assigned similar schedules requiring double shifts with spreads exceeding ten (10) hours.

59. At the beginning of her employment, Plaintiff MONDRAGON was compensated at $19.50 per hour, receiving an increase of $0.50 every year. Presently Plaintiff MONDRAGON's hourly rate is at or around $20.50. FLSA Collective Plaintiffs and Class Members were paid at similar hourly rates.

60. Throughout her employment, Plaintiff MONDRAGON’s meal breaks were regularly interrupted one (1) to two (2) times per month. Plaintiff MONDRAGON was required to keep her walkie-talkie on and remain on standby during every meal break. When interrupted during her break, Plaintiff MONDRAGON was required to continue working and respond to customer needs and management requests. Plaintiff MONDRAGON was not compensated for this time spent working during her breaks.

*Plaintiff SABATER*:

61. In or around Fall 2023, Plaintiff SABATER was hired by Defendants to work as a server at Defendants' Hard Rock Hotel New York, located at 159 W 48th Street, New York, NY 10036, specifically in the Sessions Café within the hotel.

62. Throughout his employment until his termination in August 2025, Plaintiff SABATER was scheduled to work five (5) days per week: Mondays, Tuesdays, Saturdays, and Sundays from 6:00 a.m. to 2:45 p.m., and Thursdays from 2:00 p.m. to 11:30 p.m., for a total of forty-four and a half (44.5) hours per week. Throughout his employment, Plaintiff SABATER was assigned a thirty (30) minute break each day.

63. During Plaintiff SABATER’s employment, Plaintiff SABATER would work his scheduled hours and additional hours in excess of his schedule. FLSA Collective Plaintiffs and Class Members worked similar schedules and similar hours in excess of those schedules.

64. Throughout his employment, Plaintiff SABATER would frequently be required to work double shifts, which would require him to start his morning shift at 6:00 a.m. and end his evening shift at 11:30 p.m., resulting in a spread of hours exceeding ten (10) hours. FLSA Collective Plaintiffs and Class Members were similarly required to work double shifts with spreads exceeding ten (10) hours.

65. At the beginning of his employment, Plaintiff SABATER was compensated at $19.50 per hour, receiving an increase of $0.50 every year. At the time of his termination, Plaintiff SABATER's hourly rate was $20.00 per hour. FLSA Collective Plaintiffs and Class Members were paid at similar hourly rates.

66. Throughout his employment, Plaintiff SABATER's meal breaks were regularly interrupted one (1) to two (2) times per month. Plaintiff SABATER was required to keep his walkie-talkie on and remain on standby during every meal break. When interrupted during his break, Plaintiff SABATER was required to continue working and respond to customer needs and management requests. Plaintiff SABATER was not compensated for this time spent working during his breaks.

**Class-Wide Wage and Hour Violations**

67. Throughout the relevant period, Defendants engaged in systematic wage and hour violations that affected all or substantially all Plaintiffs, FLSA Collective Plaintiffs, and Class Members. These violations resulted from uniform policies applied across all Establishments through centralized decision-making at Defendants' corporate headquarters in Davie, Florida.

68. At all relevant times, Defendants assigned FLSA Collective Plaintiffs and Class Members similar schedules, subjected them to the same policies regarding meal breaks, pre-shift work, mandatory unpaid training, tip retention, improper tip pooling, and failure to pay call-in premiums.

69. Based on Plaintiffs' observations and conversations with co-workers at the Hard Rock Hotel New York, Defendants failed to pay Plaintiffs, FLSA Collective Plaintiffs, and Class Members all due regular and overtime wages.

70. Based on Plaintiffs' observations and conversations with co-workers at the Hard Rock Hotel New York, Defendants kept and/or allowed managers and supervisors to keep a portion of the tips that Plaintiffs, FLSA Collective Plaintiffs, and Class Members earned from customers.

71. Defendants knowingly and willfully operated their business with policies of (i) failing to pay all due regular and overtime wages to Plaintiffs, FLSA Collective Plaintiffs, and Class Members, (ii) keeping a portion of the tips that Plaintiffs, FLSA Collective Plaintiffs, and Class Members earned from customers and/or distributing a portion of the tips to third-party contract workers and managers who are not entitled to receive tips under the FLSA and applicable state wage laws, and (iii) failing to pay call-in premiums for shifts lasting three (3) hours or less, all in violation of the FLSA and applicable state and local laws.

*Time-Shaving and Automatic Deductions*

72. Defendants required Plaintiffs, FLSA Collective Plaintiffs, and Class Members to arrive fifteen (15) to twenty (20) minutes before their scheduled shifts to attend pre-shift meetings prior to and during the time when they picked up uniforms from the locker room and changed into their uniforms. Despite performing these required tasks, employees were prohibited from clocking in until their official start time. This resulted in approximately one and a half (1.5) hours of unpaid pre-shift work per week for each employee.

73. When employees clocked in before their scheduled shifts, managers manually edited time entries to remove the early clock-in minutes, thereby depriving employees of earned wages. Managers at each location enforced Defendants' common policy and practice of time-shaving.

74. Defendants automatically deducted thirty (30) minutes per shift for meal breaks from employees' time, even when employees worked through their breaks or their breaks were

interrupted. Throughout their employment, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were assigned thirty (30) minute breaks and required to clock out. However, three (3) to four (4) times per week, employees' breaks were regularly interrupted by management via walkie-talkie requiring employees to assist customers or perform tasks.

75. Employees were required to keep their walkie-talkies on and remain on standby during every meal break, responding to customer needs and management requests. Employees were not permitted to leave the premises during their breaks and were required to remain on-call. Pursuant to 29 C.F.R. § 785.19, interrupted breaks during which employees are required to remain on duty and respond to work demands must be compensated. Despite this requirement, Defendants failed to compensate employees for interrupted break time.

76. This resulted in approximately two (2) hours per week of unpaid work time per employee for interrupted meal breaks alone. Given that Plaintiffs, FLSA Collective Plaintiffs, and Class Members regularly worked in excess of forty (40) hours per week, the unpaid break time and unpaid pre-shift work resulted in unpaid overtime hours.

77. Defendants also required employees to clock out at the end of their shifts but continue performing closing duties, including: cleaning, restocking, polishing silverware and glassware, and resetting tables for the next day. Employees would spend approximately thirty (30) to forty-five (45) minutes per shift performing these unpaid closing duties.

*Unpaid Off-the-Clock Training*

78. Defendants required Plaintiffs, FLSA Collective Plaintiffs, and Class Members to complete mandatory online training modules titled "School of Hard Rock" at home without pay. These training modules covered sexual harassment prevention, terrorist attack response, customer service training, and slip-and-fall prevention. Each training module lasted approximately three (3)

to four (4) hours, and employees were required to complete approximately four (4) modules during their employment.

79. Additionally, Defendants required employees to complete mandatory food handling tests and certifications at home without pay. These tests were required to be completed quarterly or bi-annually (approximately four times per year) and each test lasted approximately two (2) to three (3) hours. If employees failed to complete these tests, Defendants would remove them from the schedule. Despite the mandatory nature of this training, Defendants failed to compensate employees for this time.

80. Altogether, the unpaid off-the-clock work, time-shaving, and automatic deductions deprived Plaintiffs, FLSA Collective Plaintiffs, and Class Members of approximately two (2) to three (3) hours of pay per week. As employees regularly worked in excess of forty (40) hours per week, this unpaid time resulted in unpaid overtime compensation.

*Failure to Pay Call-In Pay (New York Class)*

81. Defendants regularly scheduled Plaintiffs, FLSA Collective Plaintiffs, and Class Members for shifts but sent them home upon arrival or within three (3) hours without paying the required three-hour call-in premium under New York law.

82. This occurred when business was slow, typically after busy holidays, or when Defendants scheduled too many employees for the same shift. Defendants would instruct employees to stop working and go home after working for less than three (3) hours.

83. This practice occurred approximately six (6) to ten (10) times for Plaintiff MONDRAGON and approximately two (2) times for Plaintiff SABATER during their employment. FLSA Collective Plaintiffs and Class Members were similarly sent home without receiving call-in pay premiums for shifts lasting less than three (3) hours.

84. Defendants willfully failed to pay call-in pay premiums to Plaintiffs, FLSA Collective Plaintiffs, and Class Members in violation of applicable New York wage laws.

*Room Charge Tip Scheme*

85. Plaintiffs observed that their wages failed to reflect the gratuities paid to them, FLSA Collective Plaintiffs, and Class Members on bills charged to guest's rooms when the guest had a credit voucher for food and beverages.

86. When guests at the Defendants' Hard Rock Hotel booked premium rooms, the guests would receive a voucher (typically $120) to use on food, drinks, and other hotel services.

87. According to Defendants, that voucher was not supposed to cover tips.

88. To use the voucher the guest would just charge their meal and beverage costs to their rooms.

89. However, when a guest included a tip on a room charge that had one of these vouchers, the Defendants assumed the guest meant to use the voucher to pay for the tip as well.

90. Instead of properly billing the guest for the tip, Defendants would presume the guest was confused and just delete the tip from the system to avoid any potential complaints or bad reviews.

91. Plaintiff SABATER complained to Defendants' management that management was unlawfully withholding employees' tips and failing to pay all earned wages.

92. Rather than investigate or remedy the issue, Defendants retaliated against Plaintiff SABATER by terminating his employment claiming that Plaintiff was attempting to steal by asking for his earned tips.

93. Previously, this alleged policy of not permitting employees to receive tips from guests with vouchers had never been enforced and directly contradicted Defendants' long-standing practice of allowing tipped employees, including Plaintiffs, to receive such gratuities

94. When employees complained to Defendants' management about the missing voucher tips, Defendants retaliated by terminating employees under the false pretext of "tip theft." Approximately eight (8) employees were terminated over this issue. This demonstrated that Defendants' allegation of "tip theft" was a mere pretext to conceal their own unlawful retention of employee tips.

*Service Charges on Buyout Events*

95. At least once per week, "buyout" or private events occurred at the Hard Rock Hotel New York at which Plaintiffs, FLSA Collective Plaintiffs, and Tipped Subclass Members worked as servers. Service charges were applied to customer invoices for these events, which were supposed to be distributed to the wait staff who worked the events.

96. Customers often left additional gratuities on top of the service charges applied to buyout events. However, Defendants improperly retained these additional tips instead of distributing them to the servers who worked these events.

97. When event times were extended or additional orders were placed, resulting in increased service fees, Defendants failed to pay the additional service fee amounts to tipped employees. Employees performed their own calculations of service fees and determined that they were being significantly underpaid.

98. Defendants failed to provide customers with an explicit written statement that any portions of surcharges, service fees, and gratuities would be retained by Defendants' management.

Defendants' failure to provide notice of their retention of tips from tipped employees violated the requirements of *Sarmiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008).

*Additional Tips on Top of Service Charges*

99. In addition to the service charges applied to buyout events, customers would leave additional gratuities for servers. However, Defendants improperly retained these additional tips instead of distributing them to servers.

100. When meals were comped or discounted, managers frequently "zeroed out" tips in the point-of-sale system, thereby depriving servers of their gratuities. In other instances, Defendants would manually reduce the check amount on comped meals to lower the tip calculation.

101. When servers approached managers about this practice, managers responded that they were keeping the tip because the server "didn't deserve it." Plaintiffs, FLSA Collective Plaintiffs, and Tipped Subclass Members made multiple complaints about this issue to human resources, however, their complaints were never addressed and the situation continued unabated.

*Tip Pool Violations*

102. Defendants required Plaintiffs and Tipped Subclass Members to participate in a tip pool. However, Defendants maintained unlawful tip pooling practices in multiple respects.

103. Beginning in June 2025, Defendants included third-party contract employees from staffing agencies in the tip pool. These contract employees were hired on a per diem basis and worked for another company, not for Defendants. Despite not being Defendants' employees, these third-party employees were included in the in-house tip pool on days when Defendants expected high reservation volumes or large private events.

104. The inclusion of third-party contract labor in the tip pool diluted the tips earned by Plaintiffs and Tipped Subclass Members, causing them to receive less money in tips on the days that contract employees were present. Plaintiffs and Tipped Subclass Members could verify this through tip sheets showing the allocation of tips among employees.

*Failure to Provide Tip Sheets*

105. Defendants intentionally failed and refused to provide Plaintiffs, FLSA Collective Plaintiffs, and Tipped Subclass Members with daily tip sheets showing the breakdown of tips earned and the allocation of tips within the tip pool, despite multiple requests from tipped employees.

106. Defendants also refused to provide service sheets or customer contracts showing the amounts of service charges versus gratuities charged for each buyout event. Without access to these documents, employees had no way of knowing how much was collected or where the money went, and could only estimate that tip-outs were lower than they should have been for the size of buyout events.

107. On at least one occasion, a tip sheet was inadvertently left accessible and employees immediately noticed that tips from tables they had served were not being properly recorded on the sheets.

108. Defendants' refusal to provide tip sheets prevented employees from verifying whether tips were properly calculated and distributed, and allowed Defendants to continue their unlawful tip retention practices without employee knowledge or ability to contest the calculations.

109. At all relevant times, each violation alleged above was a uniform policy applied to all or most Plaintiffs, FLSA Collective Plaintiffs, and Class Members, resulted from centralized

decision-making at Defendants' corporate headquarters, and was applied consistently across Defendants' Establishments.

110. Defendants knowingly and willfully operated their business with policies of: (i) failing to pay for all hours worked, including overtime, due to time-shaving and off-the-clock work requirements; (ii) unlawfully retaining tips and gratuities earned by tipped employees through voucher withholding, service charge retention, tip pool violations, and "zeroing out" tips on comped meals; and (iii) failing to pay call-in premiums for shifts lasting three (3) hours or less, all in violation of the FLSA and applicable state and local laws.

*Wage Notice and Wage Statement Violations*

111. At all relevant times, Defendants failed to provide Plaintiffs, FLSA Collective Plaintiffs, and Class Members in the following jurisdictions with proper wage notices, in violation of the following statutes:

i. New York - NYLL § 195(1);
ii. California - Cal. Lab. Code § 2810.5;
iii. District of Columbia - DC Code § 32-1008(a)(2)(B)(c);
iv. Hawaii - HRS § 388-7;
v. Nevada - Nev. Rev. Stat. Ann. § 613.760;
vi. Ohio - Oh. Const. Art. II, § 34a;
vii. Pennsylvania - 43 Pa. Stat. § 260.4; and
viii. Tennessee - Tenn. Code Ann. § 50-2-101.

112. At all relevant times, Defendants failed to provide Plaintiffs, FLSA Collective Plaintiffs, and Class Members in the following jurisdictions with proper wage statements, in violation of the following statutes:

i. New York - NYLL § 195(3);

ii. California - Cal. Lab. Code § 226;

iii. District of Columbia - DC Code § 32-1008(a)(2)(B)(b);

iv. Hawaii - HRS § 235-63;

v. Illinois - 820 ILCS 115/10(b); 115/10(d);

vi. New Jersey - N.J. Stat. § 34:11-4.10; and

vii. Pennsylvania - 34 Pa. Code § 231.36.

113. N.Y. Lab. Law § 195(1) requires that employers furnish employees with wage notices containing accurate, specifically enumerated criteria at the time of hire of the employee or prior to any change in the employee's hourly rates of pay.

114. Similarly, 12 NYCRR § 146-2.2(a) mandates that "[p]rior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday."

115. Defendants failed to furnish Plaintiffs, FLSA Collective Plaintiffs, and Class Members with accurate wage notices at the time of hire, or prior to any change in their hourly rates of pay. Specifically, when Defendants provided wage notices, if any, they failed to include the correct regular and overtime rates of pay, how the employee is paid, the regular payday, Defendants' name and address, and other required information.

116. N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

117. Similarly, 12 NYCRR § 146-2.3 mandates that "[e]very employer shall provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages," which "must list hours worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if any, deductions, and net wages."

118. As described above, Defendants, on each payday, failed to furnish Plaintiffs, FLSA Collective Plaintiffs, and Class Members with accurate wage statements containing the criteria required under the NYLL, specifically, NYLL § 195(3), and 12 NYCRR § 146-2.3.

119. Specifically, Defendants failed to furnish Plaintiffs, FLSA Collective Plaintiffs, and Class Members with accurate wage statements on a weekly basis. When Defendants provided wage statements, they failed to include the correct regular and overtime rates of pay, failed to accurately reflect all hours worked (due to time-shaving and off-the-clock work requirements), failed to accurately reflect all tips earned (due to voucher tip withholding, service charge retention, and tip pool violations), and failed to include all required information such as dates of work covered, rate or rates of pay, gross wages, deductions, net wages, and if tips are claimed as credit, the amount of tip credit taken.

120. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiffs', FLSA Collective Plaintiffs', and Class Members' interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices and wage statements function as a means of apprising employees of their rights

and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

121. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs, FLSA Collective Plaintiffs, and Class Members. Defendants' conduct actually harmed Plaintiffs, FLSA Collective Plaintiffs, and Class Members. Defendants' failure to provide wage statements listing all hours and rates of pay, including overtime hours and overtime rates, and the failure to provide wage notices properly listing the rate and frequency at which Plaintiffs, FLSA Collective Plaintiffs, and Class Members were entitled to be paid, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs', FLSA Collective Plaintiffs', and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. By failing to advise Plaintiffs, FLSA Collective Plaintiffs, and Class Members of their legal rights, Defendants were able to violate those rights without employees' knowledge thereby delaying their compensation.

122. Defendants' wage statements did not include all hours of work for Plaintiffs, FLSA Collective Plaintiffs, and Class Members due to systematic time-shaving and off-the-clock work requirements. Defendants' wage statements also failed to include all earned tips for Plaintiffs and Tipped Subclass Members due to voucher tip withholding, service charge retention, tip pool violations, and "zeroing out" tips on comped meals. By misinforming Plaintiffs, FLSA Collective Plaintiffs, and Class Members of their hours of work and earnings, Defendants were able to hide their underpayments, which delayed the realization of both the underpayments and the extent of the underpayments being made by Defendants. Additionally, Defendants' failure to provide wage

statements accurately listing Plaintiffs', FLSA Collective Plaintiffs', and Class Members' hours of work and earnings forces employees to expend time proving their hours of work and earnings, which according to NYLL, Defendants are mandated to accurately record. The failure to adhere to the law allows Defendants to hide their wrongdoing, forces Plaintiffs, FLSA Collective Plaintiffs, and Class Members to expend time and engage in additional work to receive proper compensation, and delays payment of wages owed to Plaintiffs, FLSA Collective Plaintiffs, and Class Members.

123. Further, much like a case of fraudulent concealment and/or fraudulent misrepresentation, the failure to provide proper wage statements permits Defendants an opportunity to get away with their wrongdoing.

124. The failure to accurately record hours of work on earnings statements, which Defendants are mandated by law to undertake on behalf of Plaintiffs, FLSA Collective Plaintiffs, and Class Members, dissuades reasonable workers from bringing legal actions or even advocating for their rights. Defendants created these false documents with under-recorded work hours and earnings for exactly the purpose of dissuading and inhibiting employees from exercising their rights under NYLL and the FLSA to demand their back-pay.

125. Due to Defendants' failure to provide legally mandated notices such as earnings statements and wage notices, Defendants were able to hide their wrongdoing from employees, dissuaded reasonable workers from bringing claims ending Defendants' underpayment of wages sooner, and Defendants continue to hide their wrongdoing necessitating the current litigation. The failure to provide NYLL notices delayed realization of underpayments and has delayed payment of all proper wages owed to Plaintiffs, FLSA Collective Plaintiffs, and the Class Members. This delayed payment caused Plaintiffs and Class Members to struggle to timely pay bills and other debts due to Defendants' continued attempts to hide wrongdoing from employees.

126. Moreover, the realization of the downstream harm the statute seeks to prevent—wage theft—is evident from the allegations. The pattern and policy of failing to pay proper wages is a pattern that was undoubtedly buttressed by Defendants' failure to comply with the wage statement and notice provisions of the Wage Theft Prevention Act, which were designed to prevent this precise form of wage theft by informing employees of their pay rates, hours of work, and deductions. Defendants would have been unable and unwilling to attempt underpayments had they complied with the law and accurately listed the actual hours of work for Plaintiffs, FLSA Collective Plaintiffs, and Class Members.

127. Additionally, Defendants violated NYLL § 195(3), which states that "[u]pon the request of an employee, an employer shall furnish an explanation in writing of how such wages were computed[.]" Defendants refused to provide tip sheets showing daily tip calculations and distributions, service sheets showing service charge amounts, or explanations of wage calculations despite multiple requests from Plaintiffs and other tipped employees. By refusing to provide an explanation of discrepancies in time and payment to employees' requests, Defendants delayed Plaintiffs', FLSA Collective Plaintiffs', and Class Members' recovery of funds.

128. Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiffs, FLSA Collective Plaintiffs, and Class Members for failure to provide proper wage notices.

129. Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs, FLSA Collective Plaintiffs, and Class Members for failure to provide proper wage statements.

130. As in New York, Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices at the beginning of employment and annually thereafter, as required by the wage notice laws of California, District of Columbia, Hawaii, Nevada, Ohio, Pennsylvania, and Tennessee.

131. The failure to provide proper wage notices and wage statements in these jurisdictions caused the same concrete harms to Class Members as described above for New York employees, including: (i) preventing employees from verifying accuracy of pay; (ii) allowing Defendants to conceal underpayments related to time-shaving, off-the-clock work, and tip retention; (iii) depriving employees of information needed to challenge wage theft; (iv) delaying employees' discovery of violations and recovery of unpaid wages; and (v) causing employees to struggle with bills and expenses due to delayed payment of proper wages.

132. Defendants knowingly and willfully operated their business with policies of failing to provide proper wage notices and wage statements to Plaintiffs, FLSA Collective Plaintiffs, and Class Members, in violation of applicable state and local wage laws.

*Plaintiff MONDRAGON's Individual Discrimination and Retaliation Claims*

133. In March 2025, due to pregnancy complications and a stillbirth, Plaintiff MONDRAGON requested medical leave. Despite submitting all necessary documentation and applying for FMLA leave, Defendants initially refused to accommodate her request. Plaintiff MONDRAGON's FMLA leave was eventually approved for the period of April 3 to May 14, 2025.

134. However, just one and a half weeks after her medical procedure following the stillbirth, Defendants contacted Plaintiff MONDRAGON and ordered her to return to work immediately, in direct contravention of her doctor's instructions requiring strict bed rest. When Plaintiff MONDRAGON reminded her managers that she had just undergone a medical procedure following a stillbirth and was medically required to remain on bed rest, Defendants threatened to terminate her employment if she refused to return. Out of fear of losing her job and further retaliation, Plaintiff MONDRAGON reluctantly returned to work for two (2) days while still in

physical pain and emotional distress, before Defendants finally recognized her approved FMLA leave.

135. Upon Plaintiff MONDRAGON's return from approved FMLA leave in mid-May 2025, Defendants retaliated against her almost halving her scheduled hours. This reduction occurred without explanation or legitimate business reason, despite Defendants' prior assurance that her schedule would be restored. Plaintiff MONDRAGON repeatedly complained to management about the reduction in her hours, but Defendants ignored her concerns. As a result, Plaintiff MONDRAGON suffered significant loss a of income.

136. These actions interfered with Plaintiff MONDRAGON's substantive FMLA rights in violation of 29 U.S.C. § 2612.

137. As a direct result of Defendants' unlawful and discriminatory conduct, Plaintiff MONDRAGON suffered and continues to suffer from depression, anxiety, insomnia, and heightened emotional distress. Plaintiff MONDRAGON continues to attend therapy for these symptoms.

## STATEMENT OF CLAIMS

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

138. Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

139. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

140. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA. Defendants exercised control over Plaintiffs' and FLSA Collective Plaintiffs' working conditions, including but not limited to: (i) setting their work schedules, (ii) determining their rates of pay, (iii) directing their work assignments, (iv) maintaining their employment records, and (v) controlling the terms and conditions of their employment.

141. At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

142. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiffs and tipped FLSA Collective Plaintiffs their proper tips, due to policies and practices of unlawful tip retention.

143. At all relevant times, Defendants failed to pay the proper overtime rate (time and one-half of the regular hourly rate) for hours worked exceeding forty (40) per workweek, in violation of 29 U.S.C. § 207(a). Due to Defendants' systematic policies of time-shaving, requiring off-the-clock work, and failing to compensate interrupted meal breaks, Plaintiffs and FLSA Collective Plaintiffs regularly worked over forty (40) hours per week but were not paid overtime premiums for all hours actually worked.

144. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their proper wages, including overtime wages and tips, when Defendants knew or should have known such was due.

145. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

146. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to 29 U.S.C. § 216(b).

147. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving; unpaid wages due to unlawfully retained tips; plus, an equal amount as liquidated damages.

148. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

149. Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

150. At all relevant times, Plaintiffs and New York Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

151. Defendants knowingly and willfully violated Plaintiffs' and New York Class Members' rights by failing to pay them for all hours worked, including overtime, due to time-shaving and failing to provide all earned tips, in violation of the NYLL.

152. Defendants knowingly and willfully violated Plaintiffs' and New York Tipped Subclass Members' rights by unlawfully retaining tips and gratuities in violation of NYLL § 196-d.

153. Defendants knowingly and willfully violated Plaintiffs' and New York Class Members' rights by failing to compensate their lawfully owed call-in pay premiums for each shift lasting less than three (3) hours, in violation of applicable New York wage laws.

154. Defendants knowingly and willfully failed to provide wage and hour notices to Plaintiffs and New York Class Members at the time of hire and annually thereafter, as required by NYLL § 195(1). Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiffs and New York Class Members for the violations that occurred.

155. Defendants knowingly and willfully failed to provide proper wage statements to Plaintiffs and New York Class Members with every wage payment, as required by NYLL § 195(3). Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs and New York Class Members for the violations that occurred.

156. Due to Defendant's NYLL violations, Plaintiff, Class members, and Class members are entitled to recover from Defendant unpaid wages; reasonable attorney's fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS

(brought on behalf of a Rule 23 Class)

157. Plaintiffs reallege and incorporate all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

158. At all relevant times, Class members were employed by Defendant within the meaning of the applicable state wage and hour laws, just as Plaintiffs were employed by Defendant under the meaning of the FLSA and the relevant State Wage and Hour Laws.

159. Plaintiffs can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of their overtime class claims.

160. Defendant knowingly and willfully violated Plaintiffs and Class members' rights by failing to pay them due a policy of underreporting employees' hours and failing to provide all earned tips, in violation of the state wage and labor laws outlined above.

161. Defendant knowingly and willfully failed to provide proper wage statements and notices to Wage Statement Subclass members, as required under the laws of New York State, California, and Minnesota.

162. Due to Defendant's state law violations, Plaintiffs and Class members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

163. In addition to violations of State Labor overtime laws under which Plaintiffs bring class (not individual) claims, Defendant violated State provisions requiring employers to pay employees all wages owed. Since overtime wages are owed under the FLSA, these laws encompass class members' claims just as much as would explicit overtime requirements. These state law provisions include the following:

> [e]ach employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his employees [and that] [e]ach employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employees up to such date . . . .[o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

Ariz. Rev. Stat. § 23-351(C); *see also Weeks v. Matrix Absence Mgmt.*, 2022 U.S. Dist. LEXIS 30849 (D. Ariz. 2022)

> Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

> Damages recoverable by an employee. When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

Iowa Wage Payment Collection Law, Chapter 91A.8; *see also Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) ("[T]he FLSA may be used to establish an employee's right to a certain amount of wages under the IWPCL and an employer's violation of the IWPCL for not paying all wages due its employees." (quotation omitted))

> (a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

> An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover the full amount of the judgment and all costs of such suit, including reasonable attorney's fees.

Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1231(1)

> In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable

> attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C).

164. The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. § 448.110(6)(a). However, Plaintiffs invoke the Florida Minimum Wage Act not only in his individual capacity but to bring class claims on behalf of class members residing in Florida. Thus, Plaintiffs are not personally required to provide Defendant with a pre-suit notice as to each class member. As to these absent Florida class members, courts in Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on [d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA." *Griffith v. Landry's, Inc*., 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

165. The Third Circuit Court of Appeals has clearly demonstrated the untenability of any such requirement:

> We raise the following questions to further demonstrate the error of the proposed framework adopted by our dissenting colleagues. If the dissent's "colorable legal claim" test is a threshold inquiry for commonality, why should the court not consider every potential disqualifier from one's having a "colorable legal claim?" For example, in any class certification case, should the court consider whether all potential class members complied with applicable pre-notice requirements under the relevant substantive law? Should the court consider whether every potential class member exhausted her administrative remedies under the relevant substantive law? Should the court evaluate whether each class member's claim complies with the applicable statute of limitations? The answers to these questions most certainly implicate whether a litigant, in a class action or otherwise, has a "colorable legal claim." These questions, moreover, show how flawed, from an administrative, logical, and practical standpoint, the dissent's and objectors' approach really is. No class would ever be certified because it would be impossible to demonstrate that every class member has a "colorable legal claim." (Dissenting Op. at 10.) More than this, it would gut commonality, for, most certainly, individual issues would then predominate. There would simply be no class that could meet this commonality and predominance test.

*Sullivan v. DB Invs., Inc*., 667 F.3d 273, 310 (3rd Cir. 2011).

166. Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims. Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiff's claims, and Plaintiff's claims are not subject to dismissal based on the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.").

167. Due to Defendant's state law violations, Plaintiffs and Class members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

**COUNT IV**

**VIOLATION OF CLASS MEMBERS' CONTRACTS AND/OR DEFENDANT'S UNJUST ENRICHMENT**

(brought on behalf of a Rule 23 Class)

168. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein

169. To the extent that the Fair Labor Standards Act and/or State wage laws do not protect employees for a failure to compensate gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws), Plaintiff and Class members assert such claims under breach of contract and unjust enrichment.

170. When Plaintiff and Class members entered into employment with Defendant, the parties formed implied contracts, which contain inherent duties of good faith and fair dealings, to pay employees at agreed upon hourly rates for all hours worked.

171. Plaintiff and Class members provided services to Defendant as required under their agreements. However, Defendant's failure to compensate all hours of work, including gap-time hours, breached the Plaintiff's and Class members' agreements.

172. As a direct and proximate result of Defendant's failure to act fairly and in good faith, Plaintiff and Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

173. Moreover, absent an implied contract, by virtue of Defendant's conduct as alleged herein, and Plaintiff's and Class members' performance, Defendant were unjustly enriched by the Plaintiff's and Class members' conduct and did not compensate Plaintiff and Class members fully.

174. The circumstances are such that it would be inequitable to allow Defendant to retain the excess benefit from Plaintiff and Class members conduct without paying fair value for it.

175. As a direct and proximate result of Defendant's wrongful withholding of funds that should have been paid to Plaintiff and Class members, they have sustained damages in an amount according to proof at trial.

176. Defendant's withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff's and Class members' rights with the intent to cause injury to Plaintiff and Class members. Plaintiff and Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**COUNT V**

**INTERFERENCE AND RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT**

(brought individually on behalf of Plaintiff MONDRAGON)

177. Plaintiff MONDRAGON realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

178. This count is brought by Plaintiff MONDRAGON individually alleging violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2612, 2615.

179. Defendants are covered employers under the FMLA as they employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks within seventy-five (75) miles of Plaintiff MONDRAGON's worksite during the year preceding the FMLA violation. Defendants operate hotels, cafes, and restaurants at dozens of locations nationwide, employing hundreds of employees across multiple states.

180. Plaintiff MONDRAGON is an eligible employee under the FMLA because she had been employed by Defendants for more than twelve (12) months and had worked at least 1,250 hours in the twelve (12) months prior to her request for leave.

181. In April 2025, Plaintiff MONDRAGON suffered a stillbirth and underwent a medical procedure to remove the stillborn fetus. This constituted a serious health condition within the meaning of 29 U.S.C. § 2611(11), as it involved continuing treatment by a health care provider.

182. Plaintiff MONDRAGON's doctors ordered strict bed rest for approximately one and a half (1.5) months to allow her to physically recover and emotionally grieve her loss.

183. Plaintiff MONDRAGON promptly notified her managers of her medical condition and need for leave, explaining that she was under doctor's orders to rest and heal. Plaintiff MONDRAGON submitted all necessary documentation and applied for FMLA leave.

184. Plaintiff MONDRAGON's FMLA leave was approved from April 3 to May 14, 2025.

185. Despite approved FMLA leave, Defendants interfered with Plaintiff MONDRAGON's substantive FMLA rights in violation of 29 U.S.C. § 2612.

186. These actions interfered with Plaintiff MONDRAGON's substantive FMLA rights in violation of 29 U.S.C. § 2612.

187. Upon returning from FMLA leave in mid-May 2025, Defendants retaliated against Plaintiff MONDRAGON for exercising her FMLA rights in violation of 29 U.S.C. § 2615(a)(2)=

188. Defendants' actions were willful and caused Plaintiff MONDRAGON significant harm, including:

i. Lost wages due to the reduction in hours by almost half;
ii. Emotional distress from being forced to work just one and a half (1.5) weeks after undergoing a medical procedure following a stillbirth;
iii. Depression requiring ongoing therapy;
iv. Anxiety, insomnia, and heightened emotional distress;
v. Financial hardship due to the significant decrease in income caused by the schedule reduction.

189. Plaintiff MONDRAGON continues to attend therapy for depression, anxiety, and emotional distress directly resulting from Defendants' unlawful conduct.

190. As a direct and proximate result of Defendants' willful violations of the FMLA, Plaintiff MONDRAGON is entitled to: (1) Back pay for lost hours and wages resulting from the schedule reduction; (2) Front pay for continued lost earnings; (3) Compensatory damages for emotional distress, depression, anxiety, insomnia, and other mental anguish; (4) Liquidated (double) damages for willful violations pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); (5) Reinstatement to her prior schedule of forty-seven and a half (47.5) hours per week; (6) Reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 2617(a)(3); and (7) Other equitable relief as the Court deems appropriate.

**COUNT VI**

**DISCRIMINATION AND RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

(brought individually on behalf of Plaintiff MONDRAGON)

191. Plaintiff MONDRAGON realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

192. At all relevant times, Defendants employed Plaintiff MONDRAGON within the meaning of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296.

193. At all relevant times, Defendants were employers covered by the NYSHRL as they employed four or more employees. Plaintiff MONDRAGON was an employee and qualified person within the meaning of the NYSHRL.

194. The NYSHRL provides: "It shall be an unlawful discriminatory practice: For an employer ... because of an individual's age, race, creed, color, national origin, sexual orientation,

military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a).

195. The NYSHRL not only prohibits sex discrimination generally but also makes it "an unlawful discriminatory practice for an employer ... to refuse to provide reasonable accommodations to the ... pregnancy-related conditions ... of an employee." N.Y. Exec. Law § 296(3)(a)-(b).

196. In April 2025, Plaintiff MONDRAGON suffered a stillbirth and underwent a medical procedure to remove the stillborn fetus. Her doctors ordered strict bed rest for approximately one and a half (1.5) months to allow her to physically recover and emotionally grieve her loss.

197. Defendants discriminated against Plaintiff MONDRAGON on the basis of her pregnancy-related conditions.

198. Defendants retaliated against Plaintiff MONDRAGON for exercising her rights under the NYSHRL. Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff MONDRAGON's protected rights under the NYSHRL.

199. As a direct and proximate result of Defendants' unlawful acts in violation of the NYSHRL, Plaintiff MONDRAGON has suffered and continues to suffer:

i. Economic harm from lost wages due to the reduction in hours;
ii. Severe mental anguish and emotional distress, including depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering;
iii. Physical pain from being forced to work while still recovering from her medical procedure;
iv. Ongoing psychological harm requiring continued therapy.

200. Due to Defendants' violations under the NYSHRL, Plaintiff MONDRAGON is entitled to recover from Defendants: (1) back pay for lost wages; (2) front pay; (3) compensatory damages for emotional distress and mental anguish; (4) punitive damages; and (5) reasonable attorneys' fees and costs.

**COUNT VI**

**DISCRIMINATION AND RETALIATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**

(brought individually on behalf of Plaintiff MONDRAGON)

201. Plaintiff MONDRAGON realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

202. At all relevant times, Defendants employed Plaintiff MONDRAGON within the meaning of the New York City Human Rights Law ("NYCHRL"), Admin. Code § 8-107.

203. At all relevant times, Defendants employed at least four (4) persons. Plaintiff MONDRAGON was an employee and qualified person within the meaning of the NYCHRL, and Defendants are covered employers under the NYCHRL.

204. The NYCHRL makes it "an unlawful discriminatory practice" for any private employer to refuse a reasonable accommodation to an employee for "pregnancy, childbirth or related medical condition." Admin. Code § 8-107(22)(a).

205. Defendants discriminated against Plaintiff MONDRAGON on the basis of her pregnancy and pregnancy-related conditions.

206. Defendants retaliated against Plaintiff MONDRAGON for exercising her rights under the NYCHRL

207. Defendants delayed Plaintiff MONDRAGON's request for leave, forced her to work just one and a half weeks after her stillbirth and medical procedure, and reduced her scheduled hours after she finished her leave.

208. Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff MONDRAGON's protected rights under the NYCHRL.

209. As a direct and proximate result of Defendants' unlawful acts in violation of the NYCHRL, Plaintiff MONDRAGON has suffered and continues to suffer:

i. Economic harm from lost wages due to the reduction in hours;
ii. Severe mental anguish and emotional distress, including depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering;
iii. Physical pain from being forced to work while still recovering from her medical procedure;
iv. Ongoing psychological harm requiring continued therapy.

210. Due to Defendants' violations under the NYCHRL, Plaintiff MONDRAGON is entitled to recover from Defendants: (1) back pay for lost wages; (2) front pay; (3) compensatory damages for emotional distress and mental anguish; (4) punitive damages; (5) civil penalties; and (6) reasonable attorneys' fees and costs.

**COUNT VII**

**<u>RETALIATION IN VIOLATION OF THE NEW YORK LABOR LAW</u>**

(brought individually on behalf of Plaintiffs MONDRAGON and SABATER)

211. Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

212. At all relevant times, Plaintiffs MONDRAGON and SABATER were employees of Defendants within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

213. The NYLL states in pertinent part: "No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee ... because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner." NYLL § 215(1)(a).

214. Plaintiffs MONDRAGON and SABATER complained to Defendants' management about unlawful wage practices, specifically regarding the withholding of gratuities.

215. When Plaintiffs MONDRAGON and SABATER and other employees complained to management about the missing tips, Defendants retaliated against them by terminating Plaintiff SABATER's employment in August 2025 under the false pretext of "tip theft" and constructively terminating Plaintiff MONDRAGON by reducing her hours to the point she was forced to quit.

216. Defendants' stated reasons for the terminations were pretextual.. The termination was in direct retaliation for Plaintiff MONDRAGON's and SABATER's complaints about Defendants' unlawful tip retention policies.

217. This retaliatory conduct by Defendants was in willful disregard of the provisions of the NYLL.

218. As a direct and proximate result of Defendants' unlawful acts in violation of NYLL § 215, Plaintiffs MONDRAGON and SABATER have suffered and continues to suffer:

i. Economic harm from lost wages and loss of employment;
ii. Severe mental anguish and emotional distress, including depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering;
iii. Damage to professional reputation and future employment prospects.

219. Due to Defendants' violations of NYLL § 215, Plaintiff SABATER is entitled to recover from Defendants: (1) lost wages and back pay; (2) front pay; (3) compensatory damages for emotional distress; (4) punitive damages; (5) liquidated damages; (6) reinstatement or in lieu thereof, front pay; and (7) reasonable attorneys' fees and costs.

**COUNT VIII**

**RETALIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT**

(brought individually on behalf of Plaintiffs MONDRAGON and SABATER)

220. Plaintiffs reallege and incorporate all the above allegations of this Complaint as fully set forth herein.

221. At all relevant times, Plaintiffs MONDRAGON and SABATER were employees of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA.

222. Section 15(a)(3) of the FLSA provides that it is a violation to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint ... under or related to this Act." 29 U.S.C. § 215(a)(3).

223. As alleged herein, Plaintiffs MONDRAGON and SABATER engaged in protected activity by complaining to Defendants regarding their unlawful tip retention. Specifically, Plaintiff SABATER complained about Defendants' withholding of gratuities that customers left for tipped employees.

224. In response to such complaints, Defendants engaged in retaliatory conduct against Plaintiffs MONDRAGON and SABATER and ultimately terminated Plaintiff SABATER’s employment in August 2025, and constructively terminated Plaintiff MONDRAGON by reducing her hours to the point she was forced to quit, in violation of Section 15(a)(3) of the FLSA.

225. Defendants' termination of Plaintiff SABATER and constructive termination of Plaintiff MONDRAGON were in direct retaliation for their complaints about Defendants' unlawful wage and hour policies and practices, specifically the withholding of tips from voucher balances.

226. Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

227. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs MONDRAGON and SABATER have suffered and continue to suffer:

i. Economic damages from lost wages and loss of employment;

ii. Loss of earned benefits;

iii. Severe mental anguish and emotional distress, including depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering;

iv. Damage to professional reputation and future employment prospects.

228. Due to Defendants' violation of FLSA § 215(a)(3), namely, retaliation against Plaintiffs MONDRAGON and SABATER for engaging in protected activities, Plaintiffs MONDRAGON and SABATER are entitled to recover from Defendants: (1) economic damages for lost wages; (2) compensatory damages for emotional distress; (3) liquidated damages; (4) punitive damages; (5) reinstatement or in lieu thereof, front pay; and (6) reasonable attorneys' fees and costs.

**COUNT IX**

**<u>VIOLATION OF THE NEW YORK CITY EARNED SAFE AND SICK TIME ACT</u>**

(brought individually on behalf of Plaintiff MONDRAGON)

229. Plaintiff MONDRAGON realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

230. At all relevant times, Defendants employed five or more employees and were employers covered by the New York City Earned Safe and Sick Time Act ("ESSTA"), as defined in ESSTA § 20-912.

231. The ESSTA allows that any employee of a covered employer is entitled to use sick time for "absence from work due to: (a) such employee's mental or physical illness, injury or health condition..." ESSTA § 20-914(a).

232. In April 2025, Plaintiff MONDRAGON suffered a stillbirth and underwent a medical procedure to remove the stillborn fetus. Her doctors ordered strict bed rest for approximately one and a half (1.5) months to allow her to physically recover and emotionally grieve her loss. This constituted a serious health condition entitling Plaintiff MONDRAGON to earned sick time under the ESSTA.

233. Furthermore, the ESSTA provides, in part:

> “No person shall take any adverse action against an employee that penalizes an employee for, or is reasonably likely to deter an employee from, exercising or attempting to exercise rights under this chapter or interfere with an employee's exercise of rights under this chapter and implementing rules.”

ESSTA § 20-915.

234. Defendants violated the ESSTA when they refused to allow Plaintiff MONDRAGON to take time off to address her serious health condition.

235. Defendants further violated the ESSTA by retaliating against Plaintiff MONDRAGON for exercising her rights under the ESSTA. Upon her return from medical leave in mid-May 2025, Defendants reduced her work schedule from five (5) days per week (47.5 hours) to only three (3) to four (4) days per week, causing a significant loss of income.

236. Due to Defendants' ESSTA violations, Plaintiff MONDRAGON is entitled to all applicable remedies under law including: (i) compensatory damages, (ii) punitive damages, (iii) civil penalties pursuant to ESSTA § 20-924, and (iv) attorneys' fees and costs pursuant to ESSTA § 20-924.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and the Class respectfully request that this Court grant the following relief:

i. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the FMLA, the NYLL, the FMWA, the NYSHRL, the NYCHRL, the ESSTA, and applicable state wage and hour laws;

ii. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

iii. An award of unpaid wages for all hours worked, including off-the-clock time due to pre-shift work, post-shift work, and mandatory unpaid training, due under the FLSA and applicable state wage laws;

iv. An award of unpaid wages for all hours worked during interrupted meal breaks, due under the FLSA and applicable state wage laws;

v. An award of unpaid overtime compensation, due to time-shaving and off-the-clock work, due under the FLSA and applicable state wage laws;

vi. An award of call-in pay premiums for shifts lasting less than three (3) hours, due under the NYLL and applicable state wage laws;

vii. An award of gratuities illegally retained by Defendants through voucher tip withholding, service charge retention, invalid tip pooling, and "zeroing out" tips on comped meals, due under the FLSA, the NYLL, the FMWA, and applicable state wage laws;

viii. An award of unpaid wages due to invalid tip credits, due under the FLSA, the NYLL, the FMWA, and applicable state wage laws;

ix. An award of statutory penalties for wage notice violations pursuant to NYLL § 198(1-b) and applicable state wage laws;

x. An award of statutory penalties for wage statement violations pursuant to NYLL § 198(1-d) and applicable state wage laws;

xi. An award of liquidated damages under the FLSA (29 U.S.C. § 216(b)), NYLL § 198(1-a), FMWA, FMLA § 2617, and applicable state wage laws;

xii. An award of back pay for Plaintiff MONDRAGON due to schedule reduction following FMLA leave;

xiii. An award of front pay for Plaintiff MONDRAGON or reinstatement to her prior schedule as appropriate;

xiv. An award of back pay for Plaintiffs MONDRAGON and SABATER due to unlawful retaliatory termination;

xv. An award of front pay for Plaintiffs MONDRAGON and SABATER or reinstatement as appropriate;

xvi. An award of compensatory damages for emotional distress, depression, anxiety, humiliation, and mental anguish for Plaintiff MONDRAGON due to FMLA interference, pregnancy discrimination, and retaliation;

xvii. An award of compensatory damages for emotional distress for Plaintiffs SABATER due to unlawful retaliatory termination;

xviii. An award of punitive damages for willful violations under the FMLA, NYSHRL, NYCHRL, ESSTA, NYLL, and applicable state laws;

xix. An award of civil penalties pursuant to the NYCHRL and ESSTA;

xx. An award of prejudgment and postjudgment interest, costs, and expenses of this action, together with reasonable attorneys' and expert fees pursuant to the FLSA, NYLL, FMLA, NYSHRL, NYCHRL, ESSTA, and applicable state wage laws;

xxi. Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

xxii. Designation of this action as a class action pursuant to F.R.C.P. 23;

xxiii. Designation of Plaintiffs as Representatives of the Class and Tipped Subclass;

xxiv. Designation of counsel as class counsel and collective counsel; and

xxv. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

## NY BCL §630 NOTICE AND DEMAND

Plaintiffs hereby give this notice, in writing, to each shareholder of Defendant, and any of its parents, subsidiaries, or affiliated entities that is served with the summons and complaint in this action, that they intend to hold the shareholders liable under New York Business Corporation Law § 630. This notice is given within one hundred and eighty days after termination of the employment services of Plaintiff.

Plaintiffs also demands an examination of the record of shareholders under paragraph (b) of section 624 (Books and records; right of inspection, prima facie evidence) of New York Business and Corporation Law.

An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for such services. The provisions of this paragraph shall not apply to an investment company registered as such under an act of congress entitled "Investment Company Act of 1940."

Dated: January 16, 2026

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By: *<u>/s/ C.K. Lee</u>*

C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*